Cedarburg Canning Company v. Commissioner.
Cedarburg Canning Co. v. Commissioner
Docket No. 111516.
United States Tax Court
1944 Tax Ct. Memo LEXIS 316; 3 T.C.M. (CCH) 277; T.C.M. (RIA) 44095; March 25, 1944
*316 1. Petitioner is a personal holding company. At the beginning of the taxable year 1938 it owed some indebtedness that had been incurred prior to January 1, 1934. During the taxable year it did not use or irrevocably set aside any amount to pay or to retire such indebtedness. Held, petitioner is not entitled to any reduction of its Title IA net income under section 405 (b) of the Revenue Act of 1938. 2. Where petitioner failed to file a personal holding company return on Form 1120H and the evidence does not show that such failure to file was "due to reasonable cause and not due to willful neglect" as that phrase is used in section 291 of the Revenue Act of 1938, held, there shall be added to the tax 25 per centum thereof for such failure to file a required return. Carl B. Rix, Esq., 833 Wells Bldg., Milwaukee, Wis., for the petitioner. Carroll Walker, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The respondent determined against petitioner for the taxable year ended December 31, 1938, a deficiency in income tax of $68.76, and a deficiency in personal holding company surtax of $6,798.33 plus a 25 per cent penalty thereon of $1,699.58 for failure *317 to file a personal holding company tax return on Form 1120H, all of which is in controversy except the deficiency in income tax of $68.76. In a statement attached to the deficiency notice the respondent advised petitioner in part, as follows: It has been held that you are liable for the taxable year 1938 for the surtax on personal holding companies as provided in Section 401 of the Revenue Act of 1938. The gross income requirement and the stock ownership requirement as provided in Section 402 (a) of the Revenue Act of 1938 have been met. In arriving at your undistributed Title IA net income, no reduction in your Title IA net income has been allowed under the provisions of Section 405 (b) of the Revenue Act of 1938, as no amounts were used or irrevocably set aside to pay or to retire indebtedness incurred prior to January 1, 1934. Inasmuch as you failed to file a personal holding company return within the time prescribed by law, twenty-five per centum of the tax has been added thereto in accordance with the provisions of Section 291 of the Revenue Act of 1938. By appropriate assignments of error the petitioner contests this action of the Commissioner in determining a personal *318 holding company surtax and penalty against petitioner. Findings of Fact Petitioner is a corporation organized in 1908 under the laws of the State of Wisconsin, and its principal place of business is located in the City of Cedarburg, Wisconsin. On or about March 15, 1939, petitioner filed with the Collector for the District of Wisconsin a corporation income and excess-profits tax return onForm 1120A, and reported as "Gross Income" interest of $1,137.50, dividends of $10,470, and a capital loss of $2,000; and as "Deductions" interest of $2,917.72 and taxes of $731.40, all of which resulted in a reported net income of $5,958.38. Question 6 on this return was stated and answered as follows: "6. Is the corporation a personal holding company within the meaning of section 402 of the Revenue Act of 1938? No If so, an additional return on Form 1120H must be filed." Petitioner has filed no return on Form 1120H. In the statement attached to the deficiency notice the respondent adjusted petitioner's reported net income as follows: Net income as disclosed by return $5,958.38 Unallowable deductions and additional income: (a) Disallowance of loss on
worthless stock
$2,000.00
(b) Income from the sale of
stock
25.00
(c) Disallowance of Federal
income taxes
294.65
(d) Disallowance of accrued
interest expense
1,347.72
3,667.37
Net income adjusted
$9,625.75
*319 Petitioner does not contest any of the above adjustments to net income. At least 80 per centum of petitioner's gross income for the taxable year was "personal holding company income" as that term is used in section 402 and defined in section 403 of the Revenue Act of 1938. During the taxable year 1938 more than 50 per centum in value of petitioner's outstanding stock was owned, directly or indirectly, by or for not more than five individuals. During the taxable year 1938 petitioner was a "personal holding company" as that term is defined in section 402 of the Revenue Act of 1938. Petitioner's "Title IA net income" as that term is defined in section 406 of the Revenue Act of 1938 is the amount of $9,331.10, which was determined by the respondent as follows: Net income
$9,625.75
Less: Federal income taxes paid
294.65
Adjusted net income
$9,331.10
Petitioner's "undistributed Title IA net income" as that term is defined in section 405 of the Revenue Act of 1938 is in controversy. The respondent determined such undistributed Title IA net income to be the amount of $9,331.10 in a computation as follows: Adjusted net income
$9,331.10
Dividends paid credit
None
Amount used or irrevocably
set aside to pay or retire
indebtedness
None
None
Undistributed adjusted net
income
$9,331.10
*320 At the time petitioner was organized in 1908 it operated a large canning plant at Cedarburg, Wisconsin. The stockholders were members of the Wittenberg family, which consisted of three brothers, Theodore, James, and George, and a sister and their father. The three brothers each owned 162 1/2 shares of the 600 shares outstanding. Theodore was president of the company and James was secretary-treasurer. Petitioner also owned several farms and other property including 1,000 shares of common stock of Cedarburg Fox Farms, Inc., which it purchased in 1924 at a cost of $160,000, for a large part of which it gave its promissory notes. George Wittenberg was in charge of operations of Cedarburg Fox Farms, Inc. Prior to 1938 petitioner sold 50 shares of Cedarburg Fox Farms, Inc. stock for $8,000. Petitioner continued as an operating company until about 1925 or 1926. At that time petitioner and a few other plants entered into a merger known as The J. M. Paver Company. In this merger petitioner deeded its plant to The J. M. Paver Company in consideration for preferred stock of the latter. The J. M. Paver Company failed in 1927. The title to the plant formerly owned by petitioner and which had *321 been deeded to The J. M. Paver Company was transferred in 1930 to a newly organized corporation called Paver Canneries. Thereafter, Cedarburg Canneries, Inc., sometimes hereafter referred to as Canneries, Inc., was organized and petitioner subscribed for stock in the latter company and gave its notes for the amount subscribed. Theodore Wittenberg also became president of Canneries, Inc. In the taxable year 1938 James Wittenberg was also engaged in operating the plant of Canneries, Inc. In that year there was an unusually large crop of peas and Canneries, Inc. needed financial aid in order to continue the proper operations. Its line of credit with the banks had been exceeded. It also owed the Cedarburg Fox Farms, Inc. several hundred thousan dollars. Petitioner in 1938 loaned Canneries, Inc. $19,000 secured by warehouse receipts. In order to make this loan petitioner in turn borrowed $10,000 from a local bank and gave warehouse receipts as security. Shortly after the Paver crash the three Wittenberg brothers and their sister talked over petitioner's financial situation and decided that as a general business policy petitioner's income should be used to pay its debts. No corporate *322 action was taken to that effect. On January 1, 1934, petitioner owed a total indebtedness of $100,461.03, which had been incurred prior thereto. During the next four years petitioner paid off $54,873.34 of this indebtedness and incurred new indebtedness in the net amount of $330. During the taxable year 1938 petitioner did not use or irrevocably set aside any amount whatsoever to pay or retire any part of its indebtedness which was incurred prior to January 1, 1934, in the amount of $45,587.69. During the taxable year it incurred new indebtedness in the amount of $10,080 and paid off indebtedness which had been incurred in 1937 in the amount of $330. It paid no dividends during the taxable year, or after the close of the taxable year and before the 15th day of the third month following the close of the taxable year. Petitioner's balance sheets as of December 31, 1933, 1937 and 1938 are as follows: ASSETS:
1933
1937
1938
Cash & bank
$ 4,307.97
$ 44.72
$ 125.82
Splitdorf Beth. Elec. Co.
16,735.01
14,192.01
11,649.01
Dietrich Farm
13,996.47
Cedarburg Fox Farms, Inc.
152,000.00
152,000.00
152,000.00
White Cap Co.
5,000.00
5,000.00
5,000.00
Land Northern Wisconsin
12,000.00
12,000.00
12,000.00
Bills Receivable
19,000.00
Accounts Receivable
34,682.47
31,588.76
31,588.76
Other Assets
1,169.45
259.10
259.10
Totals
$239,891.37
$215,084.59
$231,622.69
LIABILITIES & CAPITAL
Accounts Payable
$ 24,891.03
$ 22,317.69
$ 22,067.69
Bills Payable
68,070.00
23,600.00
33,600.00
Farm Mortgages
7,500.00
Capital Stock
60,000.00
60,000.00
60,000.00
Surplus
64,475.00
64,475.00
64,475.00
Undivided Profits
10,416.88
30,181.04
34,298.42
Gain for year
1,953.86
6,635.38
7,958.38
Interest Reserve
2,584.60
7,875.48
9,223.20
Totals
$239,891.37
$215,084.59
$231,622.69
*323 Petitioner's "undistributed Title IA net income" as that term is defined in section 405 of the Revenue Act of 1938 is the amount of $9,331.10. Petitioner has not shown that its failure to make and file a return of personal holding company on Form 1120H was "due to reasonable cause and not due to willful neglect" as that phrase is used in section 291 of the Revenue Act of 1938. Opinion BLACK, Judge: The error assigned by petitioner is the imposition of a personal holding company surtax plus a 25 per cent penalty for failure to file a return on Form 1120H. The facts clearly show that petitioner is a "personal holding company" as that term is defined in section 402 of the Revenue Act of 1938. Petitioner does not contend otherwise. Neither does it contest the correctness of the respondent's determination that its "Title IA net income" as that term is defined in section 406 of the same Act is the amount of $9,331.10. It does contend that under section 405 (b) of the Revenue Act of 1938 [1] it had no "undistributed Title IA net income" on the ground that all of its income was used or irrevocably set aside to retire indebtedness. The question whether during the taxable year any amount *324 was used or irrevocably set aside to pay or to retire indebtedness of any kind incurred prior to January 1, 1934, is a question of fact. The proof shows that during the taxable year no amount was so used or irrevocably set aside. During the four years immediately preceding the taxable year petitioner paid off indebtedness incurred prior to January 1, 1934, in the amount of $54,873.34. At the beginning of the taxable year petitioner's indebtedness incurred prior to January 1, 1934, amounted to $45,587.69. It remained at that figure throughout the entire taxable year and no amount was used or irrevocably set aside to pay or to retire any part of such indebtedness. During the taxable year petitioner borrowed $10,000 from a local bank, incurred some new indebtedness in the amount of $80, paid off $330 of indebtedness that was incurred in 1937, and loaned $19,000 to Canneries, Inc. Not any of these transactions have any bearing on the determination of "undistributed Title IA net income" under section 405. *325 Petitioner places considerable stress upon the oral understanding of its stockholders arrived at after the Paver failure to the effect that thereafter petitioner would use its income to pay its debts. Such an understanding cannot be said to have been irrevocable in view of what happened in the taxable year. In that year petitioner did not pay any of its pre-1934 debts and did not irrevocably set aside any amount to pay or to retire such debts. There was no agreement between petitioner and any of its creditors as to how or when petitioner's obligations would be paid. In view of these facts we do not think the oral understanding of petitioner's stockholders that its general policy would be to use is earnings in the payment of its debts is of any help to petitioner in this proceeding. Some actual use of or irrevocable setting aside of assets to pay on pre-1934 indebtedness must take place before the statute is fulfilled. Cf. . None took place in the instant case. Petitioner does not contend that there was in 1938 any actual payment on these pre-1934 debts but it does claim there was an "irrevocable setting *326 aside" for this purpose. For reasons we have already stated we hold that the evidence does not sustain this contention. Petitioner also contends that the doctrine of operates against the respondent in the instant case on the ground that it was not within the intent or spirit of the act to impose a personal holding company surtax on a taxpayer like the petitioner. The principle which petitioner is seeking to apply was stated in , as follows: * * * It is within the power of the courts to declare that a thing which is within the letter of a statute is not governed by the statute because not within its spirit or the intention of its makers. ; ; see, also, , *327 affirmed . * * * We do not think that principle is applicable in this proceeding. Cf. , affirming . Finally, petitioner contends that no penalty should be imposed. The applicable provisions of the Revenue Act of 1938 and of Regulations 101 are in the margin. [2] In , the Supreme Court, among other things, said: For 1936 the penalty presents a different question. The statute applicable provides that it could be lifted if it were shown that such failure was "due to reasonable cause and not due to willful neglect." Revenue Act of 1936, § 291, 49 Stat. 1727. * * * The question is one of fact in the first instance for the Board's determination. *328 Section 291 of the Revenue Act of 1936 is identical with the same section of the Revenue Act of 1938. In the instant proceeding petitioner has not shown that such failure was "due to reasonable cause and not due to willful neglect." In fact it has offered no direct testimony whatsoever bearing upon its failure to file a personal holding company return on Form 1120H. The most that we could do in this state of the evidence would be to infer from the evidence as a whole that petitioner, in good faith, did not believe that it was a personal holding company in 1938 but this is not enough to avoid the delinquency penalty provided by the statute. Cf. , affd. per curiam . See also , certiorari denied , affirming . Under the evidence in the record we see no escape from the imposition of the 25 per cent delinquency penalty which the Commissioner has imposed. His action in that respect is sustained. Decision will be entered *329 for the respondent. Footnotes
1. SEC. 405. UNDISTRIBUTED TITLEIA NET INCOME. For the purposes of this title the term "undistributed Title IA net income" means the Title IA net income (as defined in section 406) minus - * * * * *
(b) Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness;↩
2. SEC. 409. ADMINISTRATIVE PROVISIONS. All provisions of law (including penalties) applicable in respect of the taxes imposed by Title I, shall insofar as not inconsistent with this title, be applicable in respect of the tax imposed by this title, except that the provisions of section 131 shall not be applicable. Art. 409-1, Regulations 101: Art. 409-1. Return and payment of tax. - A separate return is required for the surtax imposed by section 401. Such returns shall be made on Form 1120H. In the case of a personal holding company which is a domestic corporation, the return is required to be made within the time provided by section 53 and in the case of a foreign corporation within the time provided in section 235. SEC. 291. FAILURE TO FILE RETURN. In case of any failure to make and file return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended.↩